LEE, Respondent, v. AMERICAN HIDE & FUR CO., Appellant.

(219 N. W. 890.)

File No. 5909.  Opinion filed June 16, 1928.)

*Peck & Wall,* of Sioux Falls, for Appellant.
*Tobin & Raley,* of Sioux Falls, for Respondent.

MORIARTY, C. The respondent, J. S. Lee, brought this action seeking to recover from the appellant corporation the sum of $150.43 and interest thereon, which he alleged to .be due him as the reasonable value and agreed purchase price of certain junk metals which he alleged that he had sold and delivered to the defendant, appellant herein.

The case was tried to a jury, which returned a verdict for the plaintiff in the sum of $115.43 and interest. From the judgment entered in accordance with said verdict and from an order denying a new trial, this appeal is taken.

In their brief appellant's counsel present 20 assignments of error. Most of these assignments deal with alleged errors of the trial court in its rulings upon objections to the introduction of evidence. As to these rulings, the assignments of error raise only one question which appears to require discussion in this opinion.

When testifying as to the loading into a car of junk for which he was seeking to recover, the plaintiff testified that he had the junk weighed at a public scale near the place where the car was being loaded. He produced 16 scale tickets which, he testified, were delivered to him by the weighmaster at Newell, who was in charge of the scale. He testified that all of the tickets were delivered to him at one time, after all the weighing had been done. The tickets described the material weighed as "scrap iron." There was no testimony to show that the tickets showed the true weight or the true character of the materials loaded into the car. Over defendant's objection, these tickets were admitted in evidence.

If the statement that these tickets were issued by the weighmaster, and that the materials were weighed on a public scale, is sufficient to bring them within the provisions of section 10391, R. C., there was no error in admitting the tickets in evidence. Section 10391 provides that the public weigher and measurer shall give to every person for whom he does any weighing a certificate showing the amount thereof, and that such certificate shall be prima facie evidence of the article, animal, or load so weighed.

But in any event the defendant did not seriously contend that plaintiff did not load about 18 tons of material into the car. And a little over 18 tons was the aggregate weight shown by the tickets. Nor did the plaintiff claim that the junk weighed was all scrap iron. He admitted that the loads contained other classes of junk, and, in particular, he admitted that these loads contained a considerable number of hard rubber tires, which defendant alleged to be worthless. The only contention as to weights concerns the weight of these tires which defendant claims should be deducted from the weight loaded into the car.

This being true, the admission of the tickets cannot have misled the jury, and any possible error in their admission was not prejudicial. We are satisfied that the record does not disclose any reversible error in the trial court's rulings on evidence. No exceptions were taken to the instructions given to the jury. Thus the sole question left for our consideration is whether the evidence is sufficient to support the verdict.

■ The evidence shows that in the early months of the year 1923 one Harry Pitts was the managing officer of the defendant corporation. At the same time he was vice president of H. Pitts & Co., a corporation. The defendant corporation was conducting a junk business in the city of Sioux Falls, and H. Pitts & Co. was conducting a similar business at Deadwood. At the time of the transactions involved herein, one Ben Hurvitz was managing the business at Deadwood and Harry Pitts was the manager at Sioux Falls. Some time between the date of the transaction involved and the time of the commencement of this action, H. Pitts & Co. went into bankruptcy.

The evidence of the plaintiff is that about the latter part of March or the 1st of April, 1923, he had a conversation with Harry Pitts, in the city of Deadwood; that Pitts told plaintiff that the

American Hide & Fur Company was going to ·establish a little business there in Deadwood, handling auto parts, etc., and that he was going to leave Hurvitz there to take care of that end of it, and he wanted the plaintiff to go to work for him. Plaintiff told Pitts that he would not care to work for wages, and Pitts asked him if he could not go out to Newell and pick up a load of iron and junk. Pitts said if plaintiff got a carload "or mostly" ship it to Sioux Falls. Pitts said to ship it to Sioux Falls to the American Hide & Fur Company. Pitts and the plaintiff discussed the prices to be paid for the junk. Plaintiff was to have $6 per ton for scrap iron, $10 per ton for bones, and 5½ cents per pound for brass or radiators.

Plaintiff went to Newell, and, on or about April 22, 1923, he loaded some junk into a gondola car at Newell. He did not have a carload, and Hurvitz asked him to have the car stopped at Belle Fourche as he ·had some ·junk there and would finish loading the car there. Plaintiff told the railroad agent at Newell to bill the car from J. S. Lee, at Newell, to American Hide & Fur Company, at Sioux Falls, and to stop for additional loading at Belle Fourche. Hurvitz had no junk at Newell and loaded none there. He put some additional junk in the car at Belle Fourche. The car was actually billed to show shipment from "Bert Hurvitz Company," at Newell, to American Hide & Fur Company, at Sioux Falls. The defendant received the car at Sioux Falls, paid the freight on it, and converted the junk to its own use.

As to what he put into the car at Newell, plaintiff testified that he loaded something more than 18 tons into it. He says he put in 730 pounds of brass and· radiators, about 1,000 pounds of bones, and a couple of sacks of rags, and that the remainder was scrap iron. He admits that in what he classes as iron there was a considerable quantity of rims from truck wheels, and that the hard rubber tires were on these rims. He weighed the brass and radiators separately from the other junk. But he did not separate the other classes of junk, but weighed the bones, rags, and scrap iron together, estimating that he had 1,000 pounds of bones, but considering that there was so little of the bones and rags that it was not worth while to keep separate account of them, although he was to have a higher price for these items than for the iron.

Pitts denied having asked the plaintiff to ship junk to the de-

fendant corporation. He admits that he had a conversation with the plaintiff at Deadwood during the early months of 1923, and admits that he told the plaintiff about what the different kinds of junk would be worth f. o. b. car in that vicinity if shipped to defendant corporation at Sioux Falls. But he says that he did not know that plaintiff had anything to do with the car shipped from Newell, and that he treated it as coming from H. Pitts & Co.

In their contention that the evidence does not support the verdict, however, appellant's counsel seem to place their chief reliance in the fact that Pitts testified that the hard rubber tires had no value whatever. He testified that it was necessary to burn the rubber off the rims in order to make the metal available. And he says that he looked at the contents of the car and estimated that there were 10 or 12 tons of these tires in the car. Appellant's counsel assumes that there is no evidence to dispute this, and that there is no evidence that there was to exceed 6 tons of junk metal in what plaintiff put in the car. But this is assuming that the jury was obliged to take this *estimate* as correct and final. On cross-examination, Pitts said that the hard rubber tires would weigh 50 to 60 pounds each, and that he did not know whether there were 200, 400, or 500 tires in the car—he did not count them or have them counted; he did not examine the car to see what other junk was in it; he did not know whether there were bones or rags or other materials in the car. He just looked at the loaded car and estimated that there were enough rubber tires there to make 10 or 12 tons. In that state of the record, as he testified that the tires weighed 50 to 60 pounds each and that he did not know that there were more than 200 of them in the car, the jury was justified in figuring that there were 200 of these tires in the car, making about 6 tons instead of 12, and deducting that amount from the 18 tons loaded by the plaintiff. This computation would produce almost exactly the result arrived at in the verdict.

We do not find that the record will justify us in saying that the evidence is insufficient to support the verdict of the jury.

The judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, SHERWOOD, CAMPBELL, and BROWN, JJ., concur.